UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| In re ENVISION HEALTHCARE CORPORATION SECURITIES LITIGATION | Civil Action No. 3:17-cv-01112 (**Consolidated with Case Nos. 3:17-cv-01323 and 3:17-cv-01397**) |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | Honorable William L. Campbell, Jr. |

JOINT STATUS REPORT REGARDING DISCOVERY

## TABLE OF CONTENTS

Page

I. PLAINTIFFS' STATEMENT OF DISCOVERY STATUS ...............................................1

    A. Status of Plaintiffs' Responses to Defendants' Discovery .......................1

    B. Disputes Concerning Defendants' Responses to Plaintiffs' Discovery ...................2

        1. Document Custodians ...............................................................................2

        2. Plaintiffs' First Set of Interrogatories to Defendants .................................6

            a. Interrogatory No. 1 ...............................................................................6

            b. Interrogatory No. 2 ...............................................................................7

            c. Interrogatory No. 3 ...............................................................................9

        3. Search Terms ...............................................................................................9

II. DEFENDANTS' STATEMENT OF DISCOVERY STATUS ...........................................11

    A. Search Terms ...............................................................................................12

    B. Custodians ...............................................................................................12

    C. Interrogatories ...............................................................................................13

    D. Discovery of Plaintiffs' Information ...............................................................................13

Lead Plaintiffs Laborers Pension Trust Fund for Northern California, LIUNA National (Industrial) Fund, and LIUNA Staff & Affiliates Pension Fund ("Plaintiffs"), and defendant Envision Healthcare Corporation ("Envision" or the "Company") and the Individual Defendants[1] (collectively, "Defendants"), each of whom individually is referred to herein as a "Party," and collectively, the "Parties," by and through their undersigned counsel, respectfully submit this Joint Status Report outlining the status of discovery and any known or anticipated discovery disputes in advance of the Court's June 29, 2020 Discovery Status Conference.

## I. PLAINTIFFS' STATEMENT OF DISCOVERY STATUS

### A. Status of Plaintiffs' Responses to Defendants' Discovery

Defendants have propounded 64 (and in one case, 63) separate document requests on each of the three Lead Plaintiffs and two named plaintiffs.[2] Plaintiffs provided responses and objections to Defendants' requests, and have met and conferred with Defendants numerous times by both telephone and through written correspondence. Plaintiffs have been producing documents on a rolling basis since May 15, 2020, and are on track to substantially complete their production by the July 31, 2020 deadline.

On June 23, 2020, Plaintiffs provided Defendants with a letter detailing Plaintiffs' positions with respect to Defendants' Requests for Production of Documents. Additionally, the Parties have negotiated the search terms to be used, and the custodial files to be searched, to collect documents responsive to Defendants' document requests. Plaintiffs do not believe there are any issues in

---

[1] As used herein, the term "Individual Defendants" refers to Defendants William A. Sanger, Randel G. Owen, Craig A. Wilson, Todd G. Zimmerman, Carol J. Burt, Mark V. Mactas, Leonard M. Riggs, Jr., Richard J. Schnall, James D. Shelton, Michael L. Smith, Ronald A. Williams, Christopher A. Holden, Claire M. Gulmi, Kevin D. Eastridge, Thomas G. Cigarran, James A. Deal, John T. Gawaluck, Steven I. Geringer, Henry D. Herr, Joey A. Jacobs, Kevin P. Lavender, Cynthia S. Miller and John W. Popp, Jr.

[2] The two named plaintiffs in this action are United Food and Commercial Workers Union Local 655 Food Employers Joint Pension Fund and Central Laborers' Pension Fund.

dispute relating to Defendants' document requests or to the custodians and search terms to be used to search Plaintiffs' documents.

Defendants have also propounded seven (and in one case, eight) separate interrogatories on each of the five plaintiffs. Plaintiffs provided responses and objections to these interrogatories, and have been meeting and conferring by phone and letters regarding those responses. By letter dated June 23, 2020, Plaintiffs informed Defendants that they intend to amend their interrogatory responses and specified the manner in which they would amend them. Plaintiffs do not believe there are any issues in dispute related to Defendants' interrogatories, but will continue to meet and confer with Defendants if they believe any outstanding issues remain.

### B. Disputes Concerning Defendants' Responses to Plaintiffs' Discovery

There are three issues concerning Plaintiffs' discovery requests to Defendants that are in dispute: (1) the proper scope and number of document custodians for Defendants to search; (2) Defendants' responses to Plaintiffs' First Set of Interrogatories; and (3) certain additional search terms proposed by Plaintiffs. Plaintiffs believe that the Parties have exhausted their conferral efforts on the custodians issue and interrogatory responses, and that these issues are ripe for motion practice and/or judicial resolution at the June 29, 2020 Discovery Status Conference. As to the proposed search terms, Plaintiffs believe that the Parties should be able to resolve the majority of their disagreements through continued conferral efforts – but there are several points of contention that are at (or may soon lead to) an impasse and require judicial resolution.

#### 1. Document Custodians

Following the exchange of numerous correspondence (on April 24, April 30, May 19, June 4, and June 22, 2020) and several telephonic conferences (on May 6 and June 1, 2020), the Parties continue to hold fundamentally different positions on the proper scope and number of document custodians for Defendants to search in this case. To date, Defendants have agreed to search the

custodial files of 41 individuals. Plaintiffs, on the other hand, believe that Defendants should search the custodial files of an additional 70 individuals.

As the Court and the Parties acknowledged at the March 2020 case management conference, "this is a big case with a lot of moving parts." *See* March 12, 2020 Hearing Transcript at 14:10-12. There are 23 Individual Defendants, a 45-month Class Period, and 40 depositions allotted to Plaintiffs. Moreover, the corporate defendant in this case underwent a merger mid-Class Period, and employed approximately 70,000 employees and contractors in various divisions located throughout the country during the Class Period. Thus, when Defendants included only 34 custodians in their initial ESI search proposal in late March 2020 – 16 of whom were Envision outside directors, and only 11 of whom were non-defendants – Plaintiffs repeatedly informed Defendants that they needed "more information on Defendants' ESI sources and organizational structure before search terms and custodians c[ould] be finalized." *See* ECF No. 173 at 2.[3]

After repeated requests, on April 21, 2020, Defendants produced two organizational charts for the 2016-2017 time period that allowed Plaintiffs to partially evaluate Defendants' initial custodian list. Those charts – which only represented half of the February 2014 through October 2017 Class Period – revealed that Defendants' custodian proposal was inadequate on its face. For instance, Defendants' initial proposal only included three custodians from the entire EmCare division that is the subject of the instant litigation. As a result of these evident inadequacies, on April 24, 2020, Plaintiffs proposed that Defendants search an additional 54 custodians whose job titles and reporting structure indicated that their custodial files would likely contain relevant

---

[3] Plaintiffs were especially concerned with the adequacy of Defendants' initial custodian proposal given Defendants' representation to Plaintiffs in June 2019 that they had preserved "the native data and documents for ***over 70*** individual custodians."

materials. On May 13, 2020, however, Defendants agreed to add only seven additional custodians – bringing the total number of custodians to 41.

While Defendants failed to provide any additional organizational charts for the first half of the Class Period, Plaintiffs' independent investigation identified several additional individuals who held relevant positions during that earlier time period. Plaintiffs supplemented their proposed custodian list on May 19, 2020 to include these additional individuals and insisted that, given the Parties' fundamentally different views on the number of custodians, the matter be raised with the Court. Defendants responded that they did "not believe the parties are [at] an impasse." Indeed, on the Parties' June 1, 2020 telephonic conference, Defendants stated that they were willing to consider adding additional custodians, and requested that Plaintiffs provide a revised custodian list that set forth the bases for Plaintiffs' belief that their proposed custodians would contain responsive documents. Plaintiffs did precisely that on June 4, 2020, organizing their (now 70)[4] proposed custodians into the following eight categories:

- ***Senior Executives***. Defendants' current custodian list omits several high-level executives who are undoubtedly in possession of responsive documents – including Envision's Chief Medical Officer, the President of EmCare, the Senior Vice President of Government Relations, and the Chief of Special Projects. These four individuals all reported directly to the Individual Defendants, and by nature of their positions (which have been corroborated by internal documents), were involved in out-of-network billing, an issue at the heart of this case.

- ***Division-Level Management***. Nor have Defendants agreed to search the custodial files of ***any*** individuals who were responsible for managing each of EmCare's various divisions. As Defendants recently stated, however, "Envision negotiates thousands of ***regional*** contracts with insurers." Indeed, Defendants' own documents indicate that the decision to enter into a contract "non-par" (*i.e.*, out-of-network) with a hospital or insurer was made at the division level, and that any complaint arising from balance billing or out-of-network fees also arose at the division level. Yet Defendants have omitted this entire level of Envision's reporting structure from their

---

[4] As Defendants began producing a substantial number of documents at the end of May, Defendants' internal documents both corroborated the relevance of Plaintiffs' proposed custodians and identified additional individuals who held similar positions earlier in the Class Period.

- 4 -

agreed-upon custodians. For this reason, Plaintiffs identified 24 individuals who served as divisional CEOs, COOs, or vice presidents during the Class Period.

- ***Reimbursement Technologies Inc***. Documents produced to date demonstrate that Envision's internal billing subsidiary, Reimbursement Technologies Inc. ("RTI"), was involved in every level of Envision's out-of-network billing operation – *i.e.*, forecasting, contract negotiations, collections, customer complaints, and opposing out-of-network billing legislation. But Defendants have only included a single individual from this critical subsidiary. Plaintiffs identified ten RTI employees who they believe are in possession of such highly relevant information.

- ***Communications/Public Relations***. Plaintiffs identified four individuals who held the positions of Chief Marketing Officer and Director of Communications during the Class Period. These individuals were involved in monitoring and responding to various media inquiries and news stories regarding out-of-network billing – including the July 2017 *New York Times* article that served as a corrective disclosure in this case – and in drafting materials for investor presentations.

- ***Government Affairs***. Plaintiffs' proposed custodian list identifies five individuals who appear to have worked with lobbyist and advocacy groups to oppose balance billing and out-of-network-related legislation.

- ***Finance***. Plaintiffs' custodian list identifies Envision's former Chief Accounting Officer and seven other individuals who appear to have been involved in the preparation and dissemination of important financial information to senior management. Several of these individuals also appear to have been involved in the drafting of SEC filings and press releases regarding Envision's financial results.

- ***Business Development/Contracting***. The two primary allegations in this case directly implicate Envision's contracts with hospitals and insurers. As such, Plaintiffs identified ten individuals that appear to have been involved with either: (1) the development and execution of such contracts; or (2) mergers and acquisitions, so as to have been involved in the diligence and execution of the AmSurg merger.

- ***Compliance***. Lastly, Plaintiffs identified four individuals from Envision's Compliance department, who are tasked with monitoring, investigating, and preventing violations of Envision's Code of Business Conduct.

Defendants provided their response to this proposal on June 22, 2020, refusing to add a single additional custodian identified by Plaintiffs. In short, while Defendants claim that they "remain willing to continue to meet and confer regarding custodians," their actions have shown that will not add additional custodians absent Court intervention. Defendants should be ordered to do so.

- 5 -
Cases\4839-7465-0049.v1-6/25/20
Case 3:17-cv-01112   Document 184   Filed 06/25/20   Page 7 of 20 PageID #: 4838

### 2. Plaintiffs' First Set of Interrogatories to Defendants

Following several rounds of correspondence (on April 10, April 24, May 4, June 4, and June 22, 2020) and multiple telephonic conferences (on May 6 and June 1, 2020) on the issue, the Parties have reached an impasse regarding Defendants' responses to the following three interrogatories:

> **Interrogatory No. 1:** For fiscal years 2013 through 2017, identify the percentage of bills from EmCare emergency room providers that were billed out-of-network in each fiscal year.
>
> **Interrogatory No. 2:** Identify EmCare's total out-of-network revenue by quarters and year for fiscal years 201[3] through 2017.
>
> **Interrogatory No. 3:** For fiscal years 2013 through 2017, identify the top 25 hospitals from which EmCare derived the largest out-of-network revenues.

#### a. Interrogatory No. 1

Defendants have not provided a substantive response to Interrogatory No. 1. Instead, Defendants' response invokes Federal Rule of Civil Procedure 33(d) and cites a Bates range of letters addressed to the Senate Committee on Homeland Security and Government Affairs ("Senate Committee") in response to their investigation into Envision's out-of-network billing practices. On April 10, 2020, Plaintiffs informed Defendants that they deemed this invocation of Rule 33(d) to be an incomplete and evasive answer, as: (1) the answer to this interrogatory is more easily ascertained by Defendants; and (2) none of the documents cited by Defendants contained a responsive answer.[5]

---

[5] By the plain language of Federal Rule of Civil Procedure 33(d), "a party may use that rule to answer interrogatories only when three requirements are met":

> (1) the answer to the interrogatory may be determined from the business records[;]
> (2) the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party responding to the interrogatory; and,
> (3) the specification is in sufficient detail to permit the interrogating party to identify, as readily as the responding party could, the records from which the answer may be ascertained.

Following the Parties' conferrals, Defendants now claim that they are investigating "whether it is possible to provide Plaintiffs with further information responsive to Interrogatory No[]. 1."

But Defendants' cited materials and correspondence on this issue already reveal that Envision can readily generate this information. For instance, the Senate Committee materials that Defendants cite show that the Senate Committee requested nearly identical information from Envision in their September 2017 letter that initiated the inquiry – *i.e.*, the "percentage of emergency department visits delivered by EmCare physicians to privately insured patients were billed as out-of-network." And in their October 2017 response, Envision was able to provide for the January 2013 to October 2017 time period: (1) the total number of billable patient encounters; and (2) the total number of billable patient encounters with out-of-network, privately insured patients. All Defendants have to do to answer Interrogatory No. 1 is use this same report or data set to generate the same information for each fiscal year from 2013 through 2017. Yet despite repeated requests from Plaintiffs, Defendants have refused to explain why they cannot do so.

### b. Interrogatory No. 2

Nor have Defendants issued a substantive response to Interrogatory No. 2 – instead invoking Rule 33(d) to refer to unspecified documents "to be produced in this action" at some future unspecified date. As with Interrogatory No. 1, Plaintiffs informed Defendants in April that they deemed this invocation of Rule 33(d) to be an incomplete and evasive answer, as: (1) the answer to this interrogatory is more easily ascertained by Defendants; and (2) Defendants failed to identify any actual documents in their response.[6] Following the Parties' conferrals, Defendants now claim that

---

*Johnson Marcraft, Inc. v. W. Sur. Co.*, No. 3:15-cv-01482, 2016 U.S. Dist. LEXIS 88695, at *5 (M.D. Tenn. July 8, 2016).

[6] *See Johnson Marcraft*, 2016 U.S. Dist. LEXIS 88695, at *6 ("When relying on Rule 33(d), the responding party must 'precisely specif[y] for *each* interrogatory . . . the actual documents where information will be found.'") (citation omitted and emphasis in original); *Columbia Falls Aluminum*

they are continuing to investigate "whether it is possible to provide Plaintiffs with further information" responsive to this interrogatory, but that "Envision does not track out-of-network revenue on a dollar or percentage basis." That is, Defendants assert that they would need to "review every patient bill in the class period" to "provide accurate out-of-network revenue on a pure dollar basis." Again, these claims are undermined by Defendants' very own documents, and by public statements that Defendants issued throughout the Class Period.

For instance, the same October 2017 letter referenced above that identified the total number of billable out-of-network patient encounters also confirms that Envision's financial systems are able to aggregate amounts billed to patients. And when the Senate Committee later requested in September 2018 that Envision provide yearly revenues from its out-of-network services – which is the precise subject of Interrogatory No. 2 – Envision did not claim that it lacked the capability to calculate such data. Rather, Defendants claimed that, based on the information they had previously provided to the Senate Committee, providing out-of-network revenues could reveal proprietary information to competitors.

In addition, Defendants issued various public statements throughout the Class Period that quantified Envision's out-of-network revenue (in both percentage and absolute terms). *See* ECF No. 88, ¶¶164-169. And documents produced to date similarly evidence Defendants' ability to calculate commercial out-of-network revenues. Defendants have failed to explain how they were able to quantify these revenues during the Class Period, but are purportedly unable to do so now.

---

*Co., LLC v. Atl. Richfield Co.*, No. CV 18-131-M-DWM, 2019 U.S. Dist. LEXIS 142162, at *8 (D. Mont. Aug. 21, 2019) ("'[R]eference to documents [defendants] eventually plan[] to provide (but ha[ve] not yet produced) . . . fails to give [plaintiffs] 'a reasonable opportunity to examine and audit' those records as required" by Fed. R. Civ. P. 33(d)(2).).

- 8 -
Cases\4839-7465-0049.v1-6/25/20
Case 3:17-cv-01112   Document 184   Filed 06/25/20   Page 10 of 20 PageID #: 4841

### c. Interrogatory No. 3

On June 5, 2020, Defendants issued an amended response to Interrogatory No. 3 that identified the "top 25 hospitals from which EmCare derived the ***largest revenue*** for fiscal years 2013 through 2017." Plaintiffs' interrogatory, however, asks Defendants to "identify the top 25 hospitals from which EmCare derived the ***largest out-of-network revenues***" for fiscal years 2013 through 2017. As with Interrogatory No. 2 discussed above, Defendants have failed to credibly explain their purported inability to track revenues on an out-of-network basis.

### 3. Search Terms

After the exchange of multiple proposals (on April 20, April 30, May 19, May 29, June 4, and June 9, 2020) and several telephonic conferences (on May 6 and June 1, 2020), the Parties have made significant progress on the additional search terms proposed by Plaintiffs that were not included in Defendants' initial search methodology. Currently, however, the Parties remain in disagreement over ten search terms.

Defendants first provided Plaintiffs with a hit report on Plaintiffs' proposed search terms on June 8, 2020, and provided their most-recent position on these terms on June 22, 2020. Plaintiffs responded with a renewed proposal on June 24, 2020 designed to address Defendants' concerns with the high hit-count volumes on the 10 disputed terms. Plaintiffs are hopeful that the Parties can continue to resolve their differences on these terms through continued negotiations. There are three particular search terms, however, that deserve special mention.

First, there is one search term that is currently ripe for adjudication and that Defendants should be ordered to run immediately – the term "nonpar OR non-par." Upon review of Defendants' first substantial email production (issued on May 26, 2020), Plaintiffs learned that Envision employees internally referred to the Company's out-of-network status with an insurer as "nonpar" or "non-par" – *i.e.*, non-participating with the insurer network. Given Defendants'

omission of this key term from their initial search methodology, Plaintiffs added "nonpar OR non-par" to their June 4, 2020 search term proposal. On June 22, 2020, however, Defendants stated that they were unwilling to run this as a standalone term, as the "unique hit count with families is more than 14,000 documents." This number of hits is not unduly burdensome on its face, and is not surprising given that out-of-network billing (and the terms the Company used internally to refer to it) are at the center of this case. Moreover, the fact that there are 14,000 unique documents that hit on synonyms for "out-of-network" only serves to evidence that Defendants' current search term methodology is deficient and is omitting relevant documents. Lastly, Plaintiffs are perplexed as to why Defendants refuse to run this highly relevant term as a stand-alone, when they have agreed to run other similarly standalone terms related to Envision's out-of-network billing, such as "OON," "balance bill*," and "surprise bill*." Defendants should be ordered to run this term.

In addition, the Parties continue to go back and forth on two search terms – "bb" and "dd"[7] – that Plaintiffs crafted to capture documents responsive to Plaintiffs' Request for Production No. 28 (Individual Defendants' transactions in Envision securities) and Plaintiffs' Request for Production No. 29 (Individual Defendants' executive compensation), respectively, without progress. While Defendants have stated that they are willing to produce documents responsive to these requests, they have continually rejected Plaintiffs' proposed terms without offering a single counter-proposal. Indeed, Defendants failed to include *any* search terms in their initial search methodology that would

---

[7] Search term "bb" is: ((stock) w/5 (purchase* OR buy OR bought OR sell OR sale OR sold OR transact*)) AND (Sanger OR Owen OR Wilson OR Zimmerman OR Burt OR Mactas OR Riggs OR Schnall OR Shelton OR Smith OR Williams OR Holden OR Gulmi OR Eastridge OR Cigarran OR Deal OR Gawaluck OR Geringer OR Herr OR Jacobs OR Lavender OR Miller OR Popp). Search term "dd" is: ((Will* w/3 Sanger*) OR (Rand* w/3 Owen*) OR (Craig w/3 Wilson*) OR (Todd w/3 Zimmerman*) OR (Chris* w/3 Holden*) OR (Claire w/3 Gulmi*) OR (Kevin w/3 Eastridge*)) AND (compensation OR salary OR bonus OR severance OR termination OR (performance review)) BUT NOT ((Annual Report) OR (Quarterly Report) OR 10-K OR 10-Q OR S-1 OR S-4 OR 424B4 OR (Proxy Statement) OR (Registration Statement) OR Prospectus OR 14A OR 8-K).

capture documents responsive to these requests. Plaintiffs are hopeful that their new revisions to these terms can address Defendants' stated concerns with the volume of returned documents, but Defendants' reticence to include or propose any search terms on insider stock transactions or executive compensation for the Individual Defendants leads Plaintiffs to believe that the Parties are close to reaching an impasse on this issue.

## II.    DEFENDANTS' STATEMENT OF DISCOVERY STATUS

Since the Joint Report Relating to Status of ESI Protocol filed on March 27, 2020, the parties have made significant progress and are working collaboratively together in negotiating and resolving a broad array of issues including document requests, interrogatories, search terms, custodians, requests for priority production, and AO 174-1 disclosures. The parties met and conferred on six total occasions and have exchanged a substantial volume of correspondence on discovery issues. Those efforts remain ongoing and are aimed at resolving all outstanding disputes before the July 31, 2020 substantial completion deadline.

Despite the challenges for Envision during this difficult time, this case is a priority for Defendants. Defendants immediately produced the priority documents Plaintiffs identified during the Initial Case Management Conference—namely, the McCaskill Congressional correspondence and organizational charts—and have now produced approximately 40,000 responsive documents (over 205,000 pages) on a rolling basis well ahead of the July 31st substantial completion deadline and are continuing to produce additional documents on a regular basis. For several months, Defendants have had a dedicated team of 30 attorneys reviewing documents potentially responsive to Plaintiffs' requests. To date, this team has completed first level review of nearly 300,000 documents with the goal of substantially completing custodial document production by the Court's July 31 deadline. The parties reached compromise on all 52 document requests served by Plaintiffs. As submitted to the Court, Envision agreed to 46 unique search term strings, 18 Envision custodians and

- 11 -
Cases\4839-7465-0049.v1-6/25/20
Case 3:17-cv-01112   Document 184   Filed 06/25/20   Page 13 of 20 PageID #: 4844

16 individual outside director defendant custodians in the Agreed Document Production Protocol filed with this Court on April 22, 2020. Since then, through the parties' collaborative discussions, Defendants have agreed to run an additional 36 unique search term strings and seven additional custodians, which added over 200,000 additional documents to Defendants' first level review. Defendants continue to work expeditiously through any other sources of potentially responsive materials.

Additionally, Plaintiffs have indicated that the overwhelming majority of documents relevant to Plaintiffs' transactions in Envision and/or AmSurg stock are in the possession of third-party investment advisors and consultants. To that end, Defendants have served eleven subpoenas on these entities and are working to gather this information from the various respondents.

The following discovery issues are still being negotiated, and are not ripe for the Court's consideration.

### A. Search Terms

Ten search terms remain in dispute. Defendants are testing amendments to those terms, which were proposed by Plaintiffs on June 24, so we can determine if there are potential compromises on these terms. No other search term disputes remain outstanding.

### B. Custodians

Besides the 25 Envision custodians and 16 individual outside director defendant custodians already being searched and reviewed, Plaintiffs have requested a further 70 additional custodians citing only the general roles listed for these custodians in certain organizational charts produced by Defendants. Defendants worked diligently at the outset of this process to identify the appropriate custodians likely to have information responsive to the remaining allegations in accord with Administrative Order 174-1; and added additional custodians both on their own based on document review and in response to supported requests from Plaintiffs. Parties are in the best position to target

- 12 -

custodians who are the most appropriate sources of relevant information. Defendants have done this. Given that Defendants believe that the custodians being searched and reviewed cover the relevant and potentially responsive materials, it is premature to add custodians as requested by Plaintiffs at this time. Rather than add additional custodians at this point, it is far more efficient and appropriate for Plaintiffs to review the many documents produced by Defendants to identify any potential gaps so the parties can have a productive meet and confer. Defendants will continue to add any custodians based on their own review should they identify any gaps during the review process and factual development.

### C. Interrogatories

The parties have resolved several issues relating to Plaintiffs' interrogatories directed to Defendants; however, regarding several interrogatories, the parties are still working through certain issues. Namely, Plaintiffs requested information about out of network revenue and the percentage of bills issued out of network. As Defendants have shared with Plaintiffs, Envision does not track revenue on an "out-of-network" versus "in-network" basis—no database or report contains the exact information Plaintiffs are seeking. Rather, to provide what Plaintiffs are seeking, Envision would need to create new documents that do not already exist. While Defendants are not required to do that, as stated in our June 22 letter to Plaintiffs, we are investigating whether it is possible to provide certain responsive data in categories Envision does track. As with other discovery issues, it is Defendants' goal to resolve this issue through the meet and confer process.

### D. Discovery of Plaintiffs' Information

While Defendants have worked expeditiously towards responding to discovery requests, Plaintiffs have lagged behind Defendants in responding to the same. To illustrate, despite taking the position that only a handful of individual custodians (Fund Administrators) possess potentially responsive documents and need to be searched, Plaintiffs have only recently agreed on certain search

terms and, as of the date of the Parties' last meet and confer, indicated that they had neither collected nor searched for emails for these few custodians. Once Plaintiffs collect and search this data, Defendants have indicated that we are willing and available to discuss modifications to any disputed search terms. Given that a party is in the best position to evaluate custodians possessing responsive information, Defendants will review both the non-party productions and Defendants' own productions prior to raising any issues relating to Plaintiffs' proposed custodians, which is the process Defendants have suggested relating to their own productions. Additionally, Plaintiffs have failed to provide Defendants with meaningful interrogatory responses although they have recently agreed to supplement. We are continuing to meet and confer with Plaintiffs on these matters and hope to resolve them without the Court's assistance.

DATED: June 25, 2020 ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
SPENCER A. BURKHOLZ
JESSICA T. SHINNEFIELD
ERIC I. NIEHAUS
CHRISTOPHER D. STEWART
J. MARCO JANOSKI GRAY
ALEXI H. PFEFFER-GILLETT


s/ Jessica T. Shinnefield
JESSICA T. SHINNEFIELD

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

|   |   |
|---|---|
|   | ROBBINS GELLER RUDMAN & DOWD LLP<br>CHRISTOPHER M. WOOD, #032977<br>CHRISTOPHER H. LYONS, #034853<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Telephone: 615/244-2203<br>615/252-3798 (fax)<br><br>Lead Counsel for Plaintiff<br><br>BARRETT JOHNSTON MARTIN<br>  & GARRISON, LLC<br>JERRY E. MARTIN, #20193<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Telephone: 615/244-2202<br>615/252-3798 (fax)<br><br>Local Counsel |
| DATED: June 25, 2020 | BASS BERRY & SIMS PLC<br>BRITT K. LATHAM, #23149<br>W. BRANTLEY PHILLIPS, JR., #18844<br>KATHRYN HANNEN WALKER, #20794<br>JOSEPH B. CRACE, JR., #27753<br><br>              s/ Britt K. Latham<br>              BRITT K. LATHAM<br><br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Telephone: 615/742-6200<br>615/742-6293 (fax)<br>blatham@bassberry.com<br>bphillips@bassberry.com<br>kwalker@bassberry.com<br>jcrace@bassberry.com<br><br>Attorneys for Defendants Envision Healthcare Corporation and the Individual Defendants |

SIMPSON THACHER & BARTLETT LLP
PETER E. KAZANOFF
CRAIG S. WALDMAN
425 Lexington Avenue
New York, NY 10017
(212) 455-3525
pkazanoff@stblaw.com
cwaldman@stblaw.com

Attorneys for Defendant Envision Healthcare Corporation

- 16 -

# CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| J. Alexander Hood II<br>Jeremy A. Lieberman<br>**Pomerantz LLP**<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br>(212) 661-1100<br>ahood@pomlaw.com<br>jalieberman@pomlaw.com | Patrick V. Dahlstrom<br>**Pomerantz LLP**<br>10 S. LaSalle Street, Suite 3505<br>Chicago, IL 60603<br>(312) 377-1181<br>pdahlstrom@pomlaw.com |
| Paul Kent Bramlett<br>Robert P. Bramlett<br>**Bramlett Law Offices**<br>P O Box 150734<br>Nashville, TN 37215<br>(615) 248-2828<br>pknashlaw@aol.com<br>robert@bramlettlawoffices.com | Kenneth S. Byrd<br>Mark P. Chalos<br>**Lieff, Cabraser, Heimann & Bernstein LLP**<br>222 2nd Avenue South, Suite 1640<br>Nashville, TN 37201<br>(615) 313-9000<br>kbyrd@lchb.com<br>mchalos@lchb.com |
| John T. Long<br>**Cavanagh & O'Hara**<br>2319 West Jefferson Street<br>Springfield, IL 62702<br>(217) 544-1771<br>johnlong@cavanagh-ohara.com | Jonathan L. Bobbitt<br>**McWherter Scott Bobbitt**<br>341 Cool Springs Blvd., Suite 230<br>Franklin, TN 37067<br>(615) 354-1144<br>jonathan@msb.law |
| John S. Hicks<br>**Baker, Donelson, Bearman, Caldwell & Berkowitz PC**<br>211 Commerce Street, Suite 800<br>Nashville, TN 37201<br>(615) 726-5600<br>jhicks@bakerdonelson.com | Elliot Greenfield<br>Shannon Rose Selden<br>**Debevoise & Plimpton**<br>919 Third Avenue<br>New York, NY 10022<br>(212) 909-6772<br>egreenfield@debevoise.com<br>srselden@debevoise.com |
| James A. Holifield, Jr.<br>**Holifield Janich Rachal & Associates PLLC**<br>11907 Kingston Pike, Suite 201<br>Knoxville, TN 37934<br>(865) 566-0115<br>aholifield@holifieldlaw.com | James Gerard Stranch IV<br>**Branstetter, Stranch & Jennings PLLC**<br>The Freedom Center<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>(615) 254-8801<br>gerards@bsjfirm.com |

Gregory F. Coleman
Lisa A. White
**Greg Coleman Law PC**
First Tennessee Plaza
800 South Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Britt K. Latham
W. Brantley Phillips, Jr.
Joseph B. Crace, Jr.
Kathryn Hannen Walker
**Bass Berry & Sims PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
blatham@bassberry.com
bphillips@bassberry.com
jcrace@bassberry.com
kwalker@bassberry.com

Jerry E. Martin
**Barrett Johnston Martin & Garrison LLC**
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com

Christopher M. Wood
Christopher H. Lyons
**Robbins Geller Rudman & Dowd LLP**
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2203
cwood@rgrdlaw.com
clyons@rgrdlaw.com

Peter E. Kazanoff
Craig S. Waldman
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017
(212) 455-3525
pkazanoff@stblaw.com
cwaldman@stblaw.com

                                                   s/ Jessica T. Shinnefield
                                                   JESSICA T. SHINNEFIELD